**Judith P. MASELLA, Plaintiff–Appellee,**

v.

**BLUE CROSS & BLUE SHIELD OF CONNECTICUT, INC., Defendant–Appellant.**

**No. 1138, Docket 90–7992.**

United States Court of Appeals, Second Circuit.

Argued April 19, 1991.

Decided June 19, 1991.

Robert J. Cathcart, Hartford, Conn. (Shipman & Goodwin, Linda L. Yoder, of counsel), for defendant-appellant.

Ridgely W. Brown, Darien, Conn. (Brown & Brown, Heather M. Brown, of counsel), for plaintiff-appellee.

Robert L. Hirtle, Jr., Brendan T. Flynn, Hartford, Conn. (Rogin, Nassau, Caplan, Lassman & Hirtle, of counsel), for Conn. Soc. of Oral & Maxillofacial Surgeons, amicus curiae.

Before FEINBERG, VAN GRAAFEILAND and McLAUGHLIN, Circuit Judges.

FEINBERG, Circuit Judge:

Defendant Blue Cross & Blue Shield of Connecticut, Inc. (Blue Cross) appeals from a judgment of the United States District Court for the District of Connecticut, T.F. Gilroy Daly, J., in favor of plaintiff Judith Masella in the amount of $1,558.43 plus pre-judgment interest. Masella brought this action pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq., to recover benefits under an employee benefit plan consisting of Blue Cross health insurance policies. Blue Cross denied benefits for the non-surgical treatment of Masella's temporomandibular joint dysfunction (TMJ) on the ground that the treatment was dental rather than medical in nature and was therefore excluded from coverage by the health insurance policies at issue. After a bench trial, the district court, applying a de novo standard of review, ruled that Blue Cross's interpretation was erroneous, and accordingly awarded judgment to Masella. For the reasons set forth below, we affirm.

## Background

In mid–1985, Judith Masella consulted her dentist because she was suffering from a severe toothache, as well as facial pain, headaches, ringing in her ears, vertigo, stiffness in her jaw, shoulder and neck and other symptoms. Masella's dentist told her that her problem appeared to be with her

jaw rather than with her teeth, and referred her to Dr. Robert Sorrentino, the co-director of the New Haven Craniofacial Pain Center, a center for the treatment of facial pain, TMJ and jaw deformity problems. After a number of diagnostic tests, Sorrentino concluded that Masella was suffering from TMJ, in her case a displaced disc in her left jaw joint.

Sorrentino, a dentist specializing in oral and maxillofacial surgery, initially recommended a non-surgical course of treatment for Masella. He prescribed an orthotic, an appliance that fit on Masella's teeth and was intended to reposition part of her jaw joint. Sorrentino also recommended biofeedback therapy, the use of transelectrical neural stimulators (TENS) and physical therapy for jaw muscle and neck muscle problems caused by the displacement of Masella's jaw joint. Masella followed the recommended course of treatment for some time, but it was of limited success in alleviating her symptoms; after further testing in September 1985, Sorrentino recommended surgery. Masella continued non-

surgical treatment while considering Sorrentino's recommendation.

During 1985, when she was diagnosed as suffering from TMJ and received the non-surgical treatment described above, Masella had health insurance coverage with Blue Cross as a participant in an employee benefit plan offered by her husband's employer. The plan consisted of three components. The "Century Contract" provided basic coverage for medical/surgical procedures enumerated in the policy up to the amounts listed in a comprehensive fee schedule. A "Major Medical Expense Plan" supplemented the basic medical/surgical benefits provided by the Century Contract and also supplemented hospital benefits provided by the third component of the coverage, a hospital plan not relevant here. Both the Century Contract and the Major Medical Expense Plan contained exclusions for certain dental treatment, but neither specifically referred to TMJ.[1]

Masella and Sorrentino submitted claims to Blue Cross for the non-surgical treat-

---

1. The Century Contract provided in relevant part:

> ARTICLE VI—EXCLUSIONS AND LIMITATIONS
> 1. Benefits will be paid only for services (a) specifically described in the Comprehensive Schedule Of Professional Services ...; (b) rendered or ordered by a Doctor; (c) within the scope of his or her licensure; and (d) medically necessary for the proper diagnosis, care and treatment of the Member....
> &ast; &ast; &ast; &ast; &ast; &ast;
> 7. Dental: Payment will not be made for the removal of cysts, exostoses in conjunction with dental procedures, such as root canal, apioectomy and extractions, when performed in the same operative field.
> No benefits will be paid for dental procedures or x-rays such as apical, bitewing, occlusal or in other than traumatic cases, panoramic radiographs.
> ARTICLE XII—DEFINITIONS
> 1. "Physician, Doctor": Whenever used in this Contract, the word "Physician" or "Doctor" means any legally registered doctor of medicine (M.D.), ... doctor of dental surgery (D.D.S./D.M.D.)....

The Major Medical Expense Plan provided in relevant part:

> III—Definitions and General Provisions
> &ast; &ast; &ast; &ast; &ast; &ast;
> 2. The provisions of this Major Medical Expense Plan are subject to the terms and conditions of a basic medical/surgical program

which is acceptable to the Corporation, in its sole discretion.
> &ast; &ast; &ast; &ast; &ast; &ast;
> 5. The term "Physician" means a physician legally licensed to practice medicine and surgery.
> 6. "Covered Medical Expenses" means usual, customary and reasonable charges incurred by a Member for necessary services after the effective date of such Member's coverage for an illness or accidental injury or pregnancy and only if performed or prescribed by a Physician, subject to the exclusions set forth in Section V, for the following:
> A. Services of Physicians for surgical and non-surgical care ... and the following legally licensed providers of care:
> (1) Services of ... dentists if such services would otherwise be covered under this Contract if rendered by a Physician.
> V—Exclusions and Limitations
> No benefits shall be provided for:
> &ast; &ast; &ast; &ast; &ast; &ast;
> 3. Dental care and treatments, dental surgery or dental appliances unless such charges are made necessary by accidental bodily injury occurring while the Member is covered under the Contract or if such benefits are specifically provided for by Endorsement....

ment of Masella's TMJ. Of the total claims of $2,313.51, Blue Cross paid $725.08, rejecting the balance of the claims as not covered.

When Masella received the first claim denials from Blue Cross, she visited the Blue Cross office and discussed the matter with a customer service representative. After Sorrentino recommended surgery, Masella also attempted to ascertain how much, if any, of the costs of the surgery Blue Cross would pay. After she was unable to obtain a satisfactory response, Masella contacted a television consumer reporter, who wrote to Blue Cross on her behalf. A series of letters were exchanged by Masella, Blue Cross and the reporter regarding the claim denials.

In the course of this correspondence, Blue Cross eventually gave Masella estimates of the amounts it would pay for the recommended surgery, but declined to specify a precise dollar amount until the surgery was actually performed. Because she was uncertain as to how much of the costs of the surgery Blue Cross would pay and was concerned about her ability to pay the unreimbursed costs, Masella elected not to go forward with the surgery, and no claim regarding the surgery is before us.

By letter dated November 18, 1985 from Customer Service Specialist Rita Marcinkus to the television reporter Masella had contacted, Blue Cross stated that the basis for the denial of Masella's claims for non-surgical treatment of TMJ was that the treatment was dental rather than medical. Marcinkus wrote that the Major Medical Expense Plan excluded coverage for "the non-surgical treatment of TMJ." Marcinkus went on to explain that the Century Contract covered certain "special services" such as physical therapy and certain diagnostic tests regardless of whether the services related to medical or dental problems and that Blue Cross had consequently paid a portion of Masella's claims.

At least some of the claim-denial forms Blue Cross sent to Masella contained a section captioned "Appeal Procedure" on the back of the form. That section stated that "You may also request a review of a denial of benefits for any claim ... by sending a written request to the Claim Review Unit, Customer Service Department, Blue Cross & Blue Shield of Connecticut" and also instructed the claimant that "You or your duly authorized representative ... may also submit issues and comments in writing."

In accordance with these instructions, Masella wrote to the Claim Review Unit on February 6, 1986. Masella noted that she had been corresponding with Marcinkus, asked if it would be necessary to appeal separately each denial of payment for treatments related to TMJ and requested that she be informed "what the status is of my request for a review of benefits denied to me for TMJ treatments." She received a reply from Marcinkus, who wrote,

> If you wish to appeal a particular claims determination, please contact me directly and I will handle any review. Our position relative to the benefits available for the treatment of TMJ, however, will not vary from that stated in my previous correspondence. Our denial of the [orthotic] is therefore correct, and is not subject to further consideration.

Masella thereafter brought an action with several other plaintiffs in state court in Connecticut, asserting various claims against Blue Cross regarding the denial of benefits for TMJ treatment. Blue Cross removed the action to the United States District Court for the District of Connecticut on the ground that ERISA governed plaintiffs' claims. After additional proceedings, Masella eventually filed an amended complaint to assert a claim for benefits under an ERISA plan pursuant to 29 U.S.C. § 1132(a), and also claimed that Blue Cross had violated the applicable procedural requirements under ERISA set forth in 29 U.S.C. § 1133. After the court denied a motion by Blue Cross for a stay of proceedings in order to conduct an administrative review, the parties submitted, among other things, a statement of their contentions together with proposed findings of fact and conclusions of law pursuant to a pre-trial order. Among the contentions submitted by Blue Cross was the

statement, "The claims were denied because treatment of TMJ relates to a dental condition, not a medical condition."

A two-day trial was held before Judge Daly in May 1990. Witnesses at trial included Masella, Sorrentino, Marcinkus and other Blue Cross employees. In addition, over the objection of Blue Cross, Masella was permitted to elicit expert testimony from Sorrentino regarding the nature of TMJ and its treatment and to call another expert witness on the same subject, Dr. Howard Mark, who like Sorrentino is a dentist specializing in oral and maxillofacial surgery. Both Sorrentino and Mark were permitted to offer their opinions that TMJ and its non-surgical treatment are medical rather than dental in nature.

Blue Cross offered evidence supporting its determination that the treatment of TMJ is dental in nature. A Blue Cross employee testified that in mid–1983, Blue Cross sent a questionnaire to its participating dentists in Connecticut to ask if they treated TMJ. Of approximately 2,000 dentists surveyed, 75 to 80 dentists responded, all stating that they did treat TMJ. Blue Cross next hired two consultants to determine whether TMJ is a medical or dental problem. One of the consultants, Dr. Wilbur Johnston, who is licensed in Connecticut for both dentistry and medicine and had been involved in treating numerous TMJ cases, testified at trial to his conclusion that TMJ is a dental problem. A report Dr. Johnston had prepared for Blue Cross in 1983 with his fellow consultant, Dr. Milton Lisansky, an orthodontist, was also admitted into evidence. The report was a one-page document on Blue Cross letterhead, which stated in part:

> Temporomandibular Joint (TMJ) Dysfunction, sometimes called Myofascial Pain Dysfunction or Cranio–Mandibular Pain Syndrome (Dysfunction), is considered by most dental and medical groups to be a dental problem, which is commonly treated by dentists. The diagnosis and treatment of the condition are taught in dental schools, and the texts are authored by dentists. The majority of the expert discussion on this subject is sponsored by dental schools, societies and organizations.
>
> TMJ Dysfunction, when reported as such, is considered a dental condition, and any services or supplies provided in connection with this condition are considered dental in nature. No benefits are payable for dental services, supplies, or treatment under our medical care contracts.

Blue Cross also produced evidence showing that the consultants' recommendation had been ratified by its Medical and Dental Advisory Committees.

In August 1990, in a thorough opinion, Judge Daly found that Blue Cross was liable for benefits because the dental exclusions in the plans did not exclude coverage for Masella's non-surgical treatment for TMJ; the judge also dismissed Masella's claim regarding procedural violations as moot and directed the parties to submit briefs on the issue of damages. In October 1990, the court awarded Masella damages in the amount of $1,588.43, the difference between the total claims submitted and the amount Blue Cross had previously paid, plus pre-judgment interest. This appeal followed.

### Discussion

*Standard of Review*

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989), the Supreme Court held that "a denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." The district court determined that neither the Century Contract nor the Major Medical Expense Plan gave Blue Cross the type of discretionary authority described in *Firestone*, and therefore conducted a de novo review of the denial of Masella's benefits.

Blue Cross claims that the district court's de novo review was erroneous because both plans gave Blue Cross sufficient

discretionary authority to warrant the more deferential "arbitrary and capricious" standard of judicial review. The Century Contract provides that benefits are available only for services "specifically described in the Comprehensive Schedule Of Professional Services." Blue Cross argues that because this provision authorizes it to decide the scope of the services for which it will offer insurance coverage by listing them in the schedule, Blue Cross must of necessity have the authority to interpret the language describing the coverage. Otherwise, Blue Cross claims, it may be forced by a court's interpretation of the plan terms to pay benefits it did not intend to offer. Blue Cross makes essentially the same argument in relation to the Major Medical Expense Plan, relying principally on the provision stating that the Major Medical Expense Plan is "subject to the terms and conditions of a basic medical/surgical program which is acceptable to the Corporation, in its sole discretion." Blue Cross claims that because it had discretionary authority to select a "basic medical/surgical program" such as the Century Contract and thereby determine what major medical benefits to offer, by necessary implication it was given similar authority to interpret the benefit terms after the offer had been accepted.

We observe, as did the district court, that the plan provisions relied on by Blue Cross bear little resemblance to the typical plan provisions cited in recent post-*Firestone* appellate decisions as the basis for a more deferential review. See, e.g., *Jones v. Laborers Health & Welfare Trust Fund*, 906 F.2d 480, 481 (9th Cir.1990) (plan gave trustees the power "to construe the provisions of ... the Plan" and provided that any construction adopted by the trustees in good faith would be binding); *Batchelor v. International Brotherhood of Electrical Workers Local 861 Pension & Retirement Fund*, 877 F.2d 441, 443 (5th Cir.1989) (plan gave trustees "full power to construe the provisions of this Agreement" as well as the authority to "interpret the Plan"); *Guy v. Southeastern Iron Workers' Welfare Fund*, 877 F.2d 37, 39 (11th Cir.1989) (plan conferred upon the trustees "full power to construe the provisions of [the] Trust").

The plan provisions relied on by Blue Cross, in contrast, do not establish that it was granted discretionary authority to construe plan terms. Every employee benefit plan describes the scope of its coverage and describes the benefits it provides. If, as Blue Cross argues, discretionary authority to initially establish these terms and conditions of the plan were equivalent to an implicit grant of discretion to interpret the terms once they were established, then every benefit plan would be held to implicitly grant such discretion to the entity that established it. We cannot accept the conclusion that the discretion to establish the terms of a plan is the same as the discretion to interpret the terms later. Such reasoning would eliminate the *Firestone* distinction between plans that give an administrator or fiduciary discretionary authority to interpret them and those that do not. Blue Cross's contention that it must have discretionary authority to interpret plan terms to avoid paying for benefits it did not intend to provide is unpersuasive in view of an insurer's ability to protect itself by including a provision that gives it discretionary authority to interpret the terms of the plan. Requiring that this discretion be provided for is consistent with ERISA's purposes of "promot[ing] the interests of employees and their beneficiaries in employee benefit plans" and "protect[ing] contractually defined benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. at 113, 109 S.Ct. at 955 (citations omitted).

We therefore hold that the district court correctly recognized that *Firestone* required it to conduct a de novo review of the plan interpretation that led to denial of Masella's claims, without deference to Blue Cross's determination.

*Scope of De Novo Review*

Blue Cross also argues that even under a de novo standard of review the court cannot consider evidence not presented to the plan administrator or fiduciary, in this case the expert testimony of Sorrentino and Mark regarding the nature of TMJ and its treatment. At least two circuits appear to

differ on this question. The Eleventh Circuit has held that the scope of de novo review entitles the district court to consider facts not available to the plan administrator at the time of the benefits denial, *Moon v. American Home Assurance Company*, 888 F.2d 86, 89 (11th Cir.1989), but the Sixth Circuit has explicitly rejected *Moon* and held that such review must be limited to a de novo consideration of the record before the administrator, *Perry v. Simplicity Engineering*, 900 F.2d 963, 966–67 (6th Cir.1990). The claimant in *Perry* had failed to provide the plan administrator with evidence showing that he had become totally disabled while covered by the plan, and the Sixth Circuit rejected the claimant's attempt to present such evidence for the first time in the district court. The Sixth Circuit reasoned in part that allowing the introduction in the district court of evidence not available to the plan administrator would make the district courts "substitute plan administrators," a function that Congress did not intend the courts to undertake in evaluating ERISA claims. *Id.* at 966.

 We believe that it is unnecessary to resolve the conflict between *Moon* and *Perry* to determine whether the district court properly admitted the expert testimony at issue in this case, although we note that in earlier decisions we appear to have accepted without discussion a district court's consideration on de novo review of evidence not presented to the plan administrator. See, e.g., *Heidgerd v. Olin Corp.*, 906 F.2d 903 (2d Cir.1990). Even if we accepted the Sixth Circuit's view that a court's de novo review of the denial of ERISA benefits should be limited to the information presented to the administrator who denied the claim—an issue we do not decide—we believe that evidence regarding the proper interpretation of the terms of the plan, like the expert testimony here, would be treated differently from evidence intended to establish a particular historical fact regarding the claimant, like the evidence of the date of total disability at issue in *Perry*. Consideration of evidence relevant to plan interpretation on de novo review does not implicate the Sixth Circuit's concern that

courts would become "substitute plan administrators," particularly since de novo review under the *Firestone* standard presupposes that the administrator's role does not include discretion to interpret the terms of the plan. Indeed, at least one circuit has suggested, without deciding, that it may be appropriate under *Firestone* to apply different standards of review to claim denials based on factual determinations and claim denials based on interpretation of the terms of the plan. *Petrilli v. Drechsel*, 910 F.2d 1441, 1445–47 (7th Cir.1990). Judge Daly persuasively distinguished *Perry* from the case before him on the basis of the type of determination involved, and we find no error in his use of expert testimony regarding the nature and treatment of TMJ for assistance in interpreting the terms of the plans.

The district judge also observed that the introduction of scientific testimony that was readily available to Blue Cross at the time of the claim denial was appropriate because "no real appellate claim record exists for this Court to review *de novo*." Blue Cross maintains that, contrary to the district court's view, any inadequacies in the record should be charged against Masella, both because she did not adequately pursue her administrative remedies by presenting expert testimony to Blue Cross and because she opposed Blue Cross's motion to stay the proceedings so that an administrative review could be conducted.

On the record before us, we find this argument to be without merit. The record shows that Blue Cross initially denied Masella's claims with little or no explanation. After Masella had made a number of attempts to discover the basis for denial, Marcinkus set forth Blue Cross's position in her November 1985 letter to the reporter. Masella thereafter followed the procedure Blue Cross had printed on its forms to request a review of the denial of benefits: she wrote to the "Claim Review Unit" in February 1986. In response, she received a letter from the same Blue Cross representative, Marcinkus, informing her that "I will handle any review," adding that "Our position relative to the benefits available

for the treatment of TMJ ... will not vary from that stated" and emphasizing that the basis for the claim denial "is not subject to further consideration."

Although Blue Cross now claims that it was in fact prepared to give the matter "further consideration" and would have considered the testimony of Masella's experts, Masella cannot be faulted for taking at face value Blue Cross's statements to the contrary. Most people would not think it fruitful to submit expert testimony to a "Claims Review Unit" consisting of the same customer service representative who stated that "Our position ... will not vary." Moreover, we would be reluctant in any event to condition the admissibility of expert testimony as to the meaning of the terms of a plan on its prior presentation to an administrator. An individual claimant under a health benefit plan may be obligated to provide particulars regarding the claimant's condition. However, requiring the claimant to support at the administrative level a disputed plan interpretation with evidence from experts would impose an unduly heavy burden, particularly when the administrator, like Blue Cross, already has superior access to the relevant expertise. Finally, Masella was under no obligation to acquiesce in a motion to stay the district court proceedings on the chance that Blue Cross was prepared to provide a more meaningful administrative review, particularly since the motion was made in response to a complaint claiming in part that Blue Cross's review procedures were deficient under 29 U.S.C. § 1133. In light of the record before us of Blue Cross's course of conduct in dealing with Masella, we are unpersuaded that any unfairness to Blue Cross resulted from the district court's admission of expert testimony not previously presented to Blue Cross.

We have considered all of Blue Cross's arguments regarding the testimony of Masella's expert witnesses, including the claim that the testimony should not have been considered because it was not limited to the state of expert knowledge at the time of Masella's treatment and claims. The district judge clearly considered this issue, and properly limited his consideration to a review of "the reasons underlying Blue Cross's claim denial in light of the scientific information readily available to it at that time."

*Plan Interpretation*

■ The district court carefully considered the testimony of Masella's experts and Blue Cross's consultants and other personnel before concluding that Masella's TMJ treatment was medical rather than dental and that consequently Blue Cross had improperly denied coverage to Masella. The court observed that Blue Cross offered no documentary evidence of its survey of dentists, offered no evidence regarding the nature of the question asked or the significance of a survey to which so few of those canvassed responded, and did not survey medical doctors. The court found the testimony of Blue Cross's consultant Johnston unpersuasive, primarily because Johnston focused on the title of the practitioner providing treatment rather than on the nature of the treatment provided and concluded that TMJ was a dental problem based on the fact that those who treated it were dentists. The report submitted to Blue Cross by Johnston and Lisansky relied on similar reasoning. In addition, the court expressed some doubt about their role as independent consultants, noting that the report was not only on Blue Cross letterhead, but stated that "No benefits are payable for dental services ... under our medical care contracts," suggesting identification with the insurer instead of impartial expertise.

On the other hand, the court found the testimony of Masella's experts Sorrentino and Mark to be highly persuasive. Both Sorrentino and Mark described the nature and treatment of TMJ in some detail, and both stated that the temporomandibular joint is essentially similar to any other joint in the body. Mark in particular emphasized that commonly used treatments for TMJ such as the physical therapy and TENS treatment given to Masella are similar to the treatment of joint problems elsewhere in the body and are primarily medical in nature. Mark and Sorrentino also acknowledged that TMJ can have a dental

component, in that the operation of the teeth can have an effect on the operation of the jaw joint. They explained that an orthotic like that given to Masella used the teeth to reposition the temporomandibular joint and did not treat the teeth themselves. Sorrentino offered the analogy of treating a "short leg syndrome" by putting a lift in a shoe. He pointed out that using the lift would not mean the treatment was for a foot problem, merely that the foot was being used to address a skeletal problem, just as in Masella's case an orthotic on the teeth was used to address a jaw joint problem.

Like the district court, we find persuasive the views of Masella's experts that Masella's treatment for TMJ principally related to the jaw joint rather than the teeth. We recognize that neither Sorrentino, who treated Masella, nor Mark, another dentist specializing in oral and maxillofacial surgery, is necessarily entirely impartial on the question of whether Blue Cross should be required to reimburse claimants for the treatment of TMJ under the terms of policies like Masella's containing "dental" exclusions. However, their explanations of the nature and treatment of the condition known as TMJ, which are essentially unchallenged by Blue Cross, consistently and clearly describe the focus of a TMJ disorder and its treatment as a joint that happens to be connected to the teeth, not the teeth themselves. The Connecticut Society of Oral and Maxillofacial Surgeons (the Maxillofacial Surgeons), appearing as amicus curiae, also describe TMJ and its treatment as focused on a disorder of the jaw rather than of the teeth, and refer us to a substantial number of state court insurance cases so holding. See, e.g., *Meade v. Prudential Insurance Co.*, 477 A.2d 726 (D.C.1984); *Celtic Life Insurance Co. v. Fox*, 544 So.2d 245 (Fla.Dist.Ct.App.1989); *Tait v. Pilot Life Insurance Co.*, 465 So.2d 888 (La.Ct.App.), cert. denied, 468 So.2d 1208 (La.1985); *Simpson v. State Mutual Life Assurance Co.*, 135 Vt. 554, 382 A.2d 198 (1977).

The district court concluded on this basis that TMJ and its non-surgical treatment were "medical" rather than "dental." Blue Cross argues, however, that this conclusion erroneously fails to consider how the term "dental" is used in the health insurance plans at issue. Sorrentino and Mark apparently used the term "dental" to mean "pertaining to the teeth," and the district court apparently accepted this usage. The Maxillofacial Surgeons also define "dental" as "pertaining to the teeth." Blue Cross contends, however, that as used in its health insurance policies the term "dental" refers to "non-surgical services primarily performed by dentists," apparently without regard to whether or not the services relate to the teeth.

As an initial matter, we note that it is far from clear that Blue Cross raised this distinction below. Blue Cross itself consistently framed the issue as whether TMJ was "medical" or "dental" without reference to the use of the terms in the plans. For example, in its pre-trial submission Blue Cross flatly stated that Masella's claims were denied "because treatment of TMJ relates to a dental condition, not a medical condition." Similarly, in its post-trial proposed findings Blue Cross referred to hiring consultants to determine "whether TMJ is a dental or medical problem" without mention of the terms of the plan.

In any event, we find Blue Cross's interpretation of the word "dental" in the policies as meaning "non-surgical services primarily performed by dentists" to be wholly at odds with the terms of its plans. The Century Contract states that benefits will be paid for listed services if "rendered or ordered by a Doctor" and explicitly defines the word "Doctor" to include not only doctors of medicine, but also doctors of dental surgery, i.e., dentists. When describing the "Dental" exclusion the Century Contract describes excluded procedures, but makes no reference to who performs them. Far from supporting Blue Cross's interpretation, the terms of the Century Contract plan indicate that the "dental" exclusion in the plan is defined by the nature of the procedure performed rather than by the title of the one who performs it and that services performed by a dentist are not necessarily excluded from coverage.

The Major Medical Expense Plan is similarly inconsistent with the interpretation Blue Cross suggests. In its description of "Covered Medical Expenses" it includes "Services of ... dentists if such services would otherwise be covered under this Contract if rendered by a Physician." Contrary to Blue Cross's contention that Masella's treatment was within the dental exclusion because she sought treatment from a dentist, the implication of this provision is that coverage depends on the nature of the services rendered rather than on the title of the practitioner rendering them. In addition, the Major Medical Expense Plan excludes "Dental care and treatments, dental surgery or dental appliances," except in specified circumstances. The use of the phrase "dental surgery" would be incomprehensible if, as Blue Cross contends, its policies consistently used the term "dental" to refer to "non-surgical services primarily performed by dentists." In addition, accepting the interpretation offered by Blue Cross would mean that the plans covered surgical treatment of TMJ but not the less intrusive (and apparently less expensive) non-surgical means of treatment for the same problem, not a particularly sensible or commendable result.

█ Finally, even if Blue Cross had shown that its interpretation of the term "dental" was no less reasonable than the interpretation used by Masella's experts and the district court, this would at most mean that the insurance plans at issue are ambiguous. Since this is an ERISA case, we are not necessarily bound by the "hornbook rule of contract interpretation" that "ambiguities in an insurance policy are to be construed against the insurer, particularly when found in an exclusionary clause." *Aetna Casualty & Surety Co. v. General Time Corp.*, 704 F.2d 80, 85 (2d Cir.1983) (Kaufman, J., concurring) (citations omitted). Compare *Kunin v. Benefit Trust Life Insurance Co.*, 910 F.2d 534, 538–41 (9th Cir.) (alternative holding), cert. denied, —— U.S. ——, 111 S.Ct. 581, 112 L.Ed.2d 587 (1990), in which the Ninth Circuit applied this rule in the ERISA context, with *Brewer v. Lincoln National Life Insurance Co.*, 921 F.2d 150, 153–154 & n. 2

(8th Cir.1990), cert. denied, —— U.S. ——, 111 S.Ct. 2872, 115 L.Ed.2d 1038 (1991), in which the Eighth Circuit reached a contrary result. Nevertheless, we believe that application of this rule of interpretation to de novo review of ERISA insurance plans is an appropriate implementation of the congressional expectation that the courts will develop a "federal common law of rights and obligations under ERISA-regulated plans." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. at 110–11, 109 S.Ct. at 954 (citing 129 Cong.Rec. 29942 (1974) (remarks of Sen. Javits)) (other citations omitted). To ignore the effect of this rule "would require us to ... afford less protection to employees and their beneficiaries than they enjoyed before ERISA was enacted," a result that would be at odds with the congressional purposes of promoting the interests of employees and beneficiaries and protecting contractually defined benefits. *Id.* at 113–14, 109 S.Ct. at 955–56. Moreover, "ERISA abounds with the language and terminology of trust law," *id.* at 110, 109 S.Ct. at 954, and application of this rule to resolve ambiguities in an ERISA insurance plan on de novo review is consistent with the basic principle of trust law that trust property is to be dealt with for the benefit of the beneficiary. See, e.g., Restatement (Second) of Trusts § 170(1) (1959).

As stated above, Blue Cross has consistently maintained that its reason for denying Masella's claims was its determination that the treatment of TMJ was "dental" rather than "medical." Because we agree with the district court that Masella's treatment was not "dental" as that term was used in the insurance plans at issue, we also agree with the court's conclusion that Blue Cross improperly interpreted its plans to exclude coverage for the non-surgical treatment of Masella's TMJ disorder.

*Contractual limitations period*

█ Blue Cross also claims that the district court should have dismissed Masella's suit as time-barred because it was filed after a contractual limitations period had expired. As far as we can determine from the record, the first time Blue Cross raised

this issue with any clarity was in its reply to Masella's post-trial submission, and we cannot say that the district court erred in holding that Blue Cross had waived the contractual limitations claim by failing to assert it in a timely fashion.

We have considered all of appellant's arguments, and we affirm the judgment of the district court.

VAN GRAAFEILAND, Circuit Judge, concurring in result:

Because I believe that Congress did not intend to give insurance beneficiaries any lesser protection under ERISA than they had under traditional state rules that construed policy ambiguities in their favor, I concur in the result.