James Lynn SHIPP, Plaintiff,

v.

PROVIDENT LIFE & ACCIDENT IN-SURANCE COMPANY, Unum Provident Corporation, Unum Life Insurance Company of America, et al., Defendants.

No. Civ.A. 02–A–105–E.

United States District Court,
M.D. Alabama,
Eastern Division.

Aug. 16, 2002.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, Chief Judge.

### I. *INTRODUCTION*

This cause is before the court on the Defendants' Motion for Summary Judgment (Doc. # 12), as well as Plaintiff's Motion to Strike (Doc. # 16) and Defendants' Motion to Strike Affidavit of Dr. Michael C. McClanahan (Doc. # 22). Plaintiff's Complaint was originally filed in the Circuit Court of Tallapoosa County, Alabama on December 12, 2001, and the case was removed to this court on January 25, 2002. The Complaint alleges that the Defendants wrongfully denied benefits under a disability insurance policy, and the case was removed on the ground that the policy is an employee benefit plan covered by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*

For reasons to be discussed, the Defendants' Motion for Summary Judgment is due to be DENIED.

### II. *SUMMARY JUDGMENT STANDARD*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions

Mitchell Edgar Gavin, Mitchell E. Gavin & Associates, Alexander City, AL, for Plaintiff.

Henry T. Morrissette, Jaime W. Betbeze, Hand Arendall, L.L.C., Mobile, AL, for Defendant.

of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–324, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## III. *FACTS*

The facts as presented in the submissions of the parties, viewed in a light most favorable to the nonmovant for purposes of summary judgment, are as follows:

In January 1996, Shipp was hired by Inteplast Group, Ltd. as a National Sales Manager. As an employee, Shipp received group long-term disability insurance coverage under a plan issued by the Defendants (collectively "Provident"), a benefit plan covered by ERISA. The policy provided coverage for disability defined as:

During the Elimination Period and the Own Occupation Period, TOTAL DISABILITY OR TOTALLY DISABLED means that Covered Persons:

1. are unable to perform on a full-time or part-time basis each of the Important Duties of their Own Occupation because of an Injury or Sickness that started while insured under this Policy;

2. do not work at all in any occupation; and

3. are under a Physician's Care.

After the Own Occupation Period, Covered Persons will continue to be Totally Disabled if they:

1. are unable to work at all in any occupation for which they are or may become suited by education, training or experience; and

2. are under a Physician's Care.

Policy, Attach. 1 to Def.Exh. A at 13. "Own Occupation" is defined as "the occupation the Covered Person is routinely performing immediately prior to the Date of Disability. We will look at the Covered Person's occupation as it is performed in the national economy rather than as performed for a specific employer or a specific location." *Id.*

Shipp filed a claim for long-term disability benefits under the plan on November 1, 1999. In his claimant's statement, Shipp related that his disability was due to coronary artery disease. After the policy's applicable elimination period, Provident paid disability benefits beginning December 6, 1999, reserving its rights concerning

liability on the claim pending an investigation. Incident to the investigation of Shipp's claim, Provident requested and received medical records from Dr. Barry Mangel, Dr. Louis Prevosti, Piedmont Hospital, Kennestone Hospital, Russell Hospital, and Lucy Lawrence, Shipp's cardiac rehabilitation specialist.

Shipp's various records reflect a significant history of problems with his heart. In a record dated June 28, 1999, Dr. Mangel stated that "I have followed Mr. Shipp since March of 1998. He has a history of coronary artery disease and has had several revascularization procedures, most recently having undergone coronary artery bypass grafting on June 12, 1999. I have recommended to Mr. Shipp indefinite disability as I feel that his excessive traveling and stress of work would adversely affect his future health." PLACL00001 and 00054.[1]

As part of its investigation of Shipp's claim, Provident requested a vocational report from Heidi Bimrose, a vocational expert. The report concluded that the material duties of Shipp's occupation were consistent with those of a Sales Manager, as that occupation is defined by the Dictionary of Occupational Titles ("DOT"). *See* PLACL00202. According to the DOT, the physical requirements of a Sales Manager are sedentary in nature. *See id.* Apparently based on this information, Bimrose concluded that Shipp should have been able to perform the duties of a Sales Manager under the restrictions and limitations set forth in his medical records. *Id.*

Provident then determined that Shipp did not meet the policy definition of "disabled" and terminated his benefits as of August 31, 2000. *See* PLACL00204–205. On November 2, 2000, Shipp wrote to Provident appealing their decision to terminate his disability benefits. *See* PLACL00247–00250. Included in his letter were (1) a physical capacities evaluation and residual functional capacity questionnaire prepared by Dr. Mangel dated June 21, 2000 and (2) the favorable decision of the Social Security Administration Office of Hearings and Appeals, finding Shipp disabled with the period of disability commencing on June 4, 1999. Shipp's letter also notified Provident that his medical care and treatment had been transferred from Dr. Mangel to Dr. John Mitchell at The Heart Center Cardiology, P.C. in Opelika, Alabama. *Id.* Provident never requested Shipp's records from Dr. Mitchell.

Provident did, however, request Shipp's records from East Alabama Medical Center. The records show that on November 27, 2000, Shipp underwent a surgical procedure for deployment of an intracoronary stent in his mid-right coronary artery. *See* PLACL00264. On December 8, 2000, Shipp was treated for chest pains in the emergency room at East Alabama Medical Center. *See* PLACL00273–00275. On December 11, 2000, Shipp was administered an exercise stress test that revealed an "anterior wall abnormality." *See* PLACL00296. Shipp reported chest pain during the exercise, but Provident's records show that the pain was "non-diagnostic according ECG criteria." *Id.* Shipp's records were submitted for further clinical review.

Provident's review of the additional medical records, performed by their clinical consultant Rebecca Leger, noted that Dr. Mitchell's comments regarding the stress test included the impression that Shipp had "good functional capacity." Dr.

---

1. References to the administrative record are to numbers located in the right-hand margin of pages in the claim file.

Mitchell's notes also contain the statement, "OVERALL IMPRESSION: ANTEROAPICAL DEFECT, RAISING THE QUESTION OF WORSENING ISCHEMIC DISEASE." PLACL00270. This statement was not included in Leger's review document. Leger's review also noted that Shipp's right coronary artery is unbypassed and has a severe lesion. *See* PLACL00296.

Having reviewed the objective evidence of Shipp's heart condition, Leger came to the conclusion that "[i]t would appear that the insured would be able to perform activities/work at the light exertional level. The insured may be able to safely perform occasional medium activities/work." PLACL00295. Dr. Thomas Hasway also performed a clinical review and concluded, "[i]n light of his demonstrated performance on the treadmill on 12/11/00, the claimant is capable of full-time medium exertional activities." *Id.* An additional review by a Provident cardiologist, Dr. Jeffrey Johnson, found "no objective evidence ... supporting an inability to perform sedentary work as his job description is listed." PLACL00302–00303. Dr. Johnson's report also noted that "[i]t is likely that he could also perform light and possibly not constant (i.e. no longer than 2–4 hours at a time) medium activity." *Id.*

Based on its review of the additional medical records provided by Shipp, Provident determined that additional benefits were payable for the period of September 1, 2000 through December 11, 2000 by

virtue of the additional medical procedures performed on him. *See* PLACL00305–00306. Provident denied benefits beyond December 11, 2000.

On March 13, 2001, Shipp wrote Provident again requesting that his appeal for long-term disability benefits be approved. *See* PLACL00320–00321. Provident also received a letter from Dr. Mitchell dated April 23, 2001, recounting Shipp's medical history and stating the doctor's opinion that "[b]ased on the above medical history, it appears Mr. Shipp is disabled." PLACL00324. Dr. Mitchell's letter was submitted to Provident's cardiologist, Dr. Johnson, who reviewed the letter and concluded that there was no further objective evidence submitted that would alter his previously rendered opinion. Provident then replied to Shipp on June 26, 2001, informing him that their earlier decision to deny benefits would be upheld. *See* PLACL00336–00338. Provident also informed Shipp that he had exhausted his administrative remedies and the its decision was final. *See id.*

### IV. *DISCUSSION*

#### A. Motions to Strike

■ At the outset, the court will address the pending motions to strike. Provident has moved to strike the affidavit of Dr. Michael McClanahan as being outside the reviewable record of this case and inadmissible pursuant to Fed.R.Evid. 702.[2] Shipp has moved to strike a portion of the affidavit of Mona Bombassi, arguing that

**2.** Provident also contends that Dr. McClanahan's affidavit should be stricken because Dr. McClanahan was not timely disclosed as an expert in this case. Provident concedes that the parties agreed to waive the disclosure deadlines. Provident asserts, however, that Dr. McClanahan was not disclosed until his affidavit was attached to Shipp's opposition brief, in violation of the parties' agreement. The court declines Provident's invitation to

delve into the substance of the parties' agreement. Provident had ample opportunity to put the terms of the agreement in writing so as to protect its interest in the timely disclosure of experts. Since the parties agree that the initial deadlines were waived, the court finds that Provident's objection at this late stage is untimely and does not constitute a proper basis for striking the affidavit.

paragraph 5 is inadmissible under Fed. R.Evid. 701 and/or 702.

Dr. McClanahan's affidavit renders an opinion as to the reliability of Heidi Bimrose's assessment of Shipp's occupation. In essence, Dr. McClanahan's opinion is that Bimrose's assessment is flawed because it is based on the facile inference that, since Shipp's job title is "National Sales Manager," the duties of his occupation are therefore consistent with those described in the DOT under the heading "Sales Manager." Provident's main objection to Dr. McClanahan's opinion is that it was not part of the record before it when it rendered its decisions respecting Shipp's claim.

Provident has cited two cases in the Eleventh Circuit which, it contends, stand for the proposition that a court reviewing an ERISA benefits denial is limited to a review of the record before the plan administrator at the time the decision was made. *See Buckley v. Metropolitan Life,* 115 F.3d 936, 941 (11th Cir.1997) ("[i]n reviewing a termination of benefits under the arbitrary and capricious standard, the function of a reviewing court is to discern whether there was reasonable basis for the decision, relying on the facts known to the administrator at the time the decision was made"); *Lee v. Blue Cross/Blue Shield of Ala.,* 10 F.3d 1547, 1550 (11th Cir.1994) ("[a]pplication of the arbitrary and capricious standard requires us to look only to the facts known to the administrator at the time the decision was made to deny [ ] coverage").

The parties agree, however, that the applicable standard of review in this case is what has been referred to as "heightened arbitrary and capricious review," which is the standard applied in cases where a conflict of interest exists for the plan administrator.[3] There is at least one case in the Eleventh Circuit suggesting that the scope of review is limited to the facts known by the administrator even in cases applying the heightened arbitrary and capricious standard. *See Levinson v. Reliance Standard Life Ins. Co.,* 245 F.3d 1321, 1326 (11th Cir.2001). The choice, however, of the "facts known" language in the Eleventh Circuit's articulation of this limitation, in this court's view, is significant. Provident has not cited, nor has the court's own research revealed, any cases stating that a reviewing court may not look outside the administrative record *per se.* Although subtle, the distinction is significant where the evidence at issue is not offered to establish a historical fact, but rather to assist the trier of fact in understanding the manner in which a conclusion was drawn by the plan administrator. Given that McClanahan's opinion is offered primarily for the purpose of calling into question the mode of analysis employed by Provident's expert, the court finds that this is such a case.

The Second Circuit has countenanced this distinction in the context of *de novo* review of an administrator's denial of ERISA benefits. *See Masella v. Blue Cross & Blue Shield of Connecticut,* 936 F.2d 98, 103–04 (2d Cir.1991). At the time *Masella* was decided, the Second Circuit had not decided whether evidence outside the administrative record could be considered in a court's *de novo* review. *See id.* The *Masella* court reasoned, however, that the issue need not be resolved, because "evidence regarding the proper interpretation of the terms of the plan, like the expert testimony here, [should] be treated differently from evidence intended to establish a particular historical fact regarding the claimant...." *Id.* at 104. The court noted that this rationale was under-

---

3. This standard and its ramifications for this case are addressed more fully *infra.*

girded by the fact that plan administrators are not afforded discretion to interpret the terms of the plan in situations where the *de novo* standard is applicable. *Id.*

Similarly, under the "heightened arbitrary and capricious" standard, "a highly deferential review is inappropriate." *Levinson,* 245 F.3d at 1326. Accordingly, it is this court's opinion that an expert's testimony as to the propriety or efficacy of the plan administrator's review process is admissible to assist the trier of fact in understanding the considerations that account for the decision being reviewed. *See Masella,* 936 F.2d at 104. This exception is especially appropriate where the issue of whether a decision was arbitrary or capricious turns on whether a technique or mode of analysis was properly applied.

In addition to *Masella,* there is other authority outside the context of ERISA review that supports the admissibility of the type of evidence at issue here. In the context of arbitrary and capricious review of a federal agency's decision, the court in *Elf Atochem North America, Inc. v. United States* noted that:

> Other courts have held that outside [expert] evidence may be helpful on a limited basis to decide whether an agency acted arbitrarily and capriciously. These courts have used outside evidence not for historical purposes, but to gain a better understanding of the subject area, or to enlighten them as to what the agency could have considered, but did not. (citations omitted).

882 F.Supp. 1499, 1502–03 (E.D.Pa.1995). By the same token, the court determines that the use of expert testimony to aid in the court's understanding of the rationale of a plan administrator's decision does not fall outside the proper scope of review. To hold otherwise would limit the court's review not only to the facts in the record, but

also to the plan administrator's technical expertise as evinced in the record.

Provident moves to strike Dr. McClanahan's affidavit on two other grounds which merely require summary consideration. First, Provident asserts that the interpretations applied by Dr. McClanahan are contrary to interpretations applied under ERISA. This argument goes to the merits of Dr. McClanahan's opinion, which will be addressed in the court's consideration of the parties' respective arguments on the merits of the case. Second, with scant explanation, Provident asserts that Dr. McClanahan's opinion does not conform to the strictures of Fed.R.Evid. 702. The court finds that the opinion is supported by sufficient facts (a review of the record) and is the product of the application of reliable principles and methods. A review of Dr. McClanahan's considerable credentials, coupled with the court's review of his analysis, gives the court every confidence in the reliability of Dr. McClanahan's ability to express an opinion as far as Rule 702 is concerned. The weight to be given an opinion expressed by him is, of course, another matter. Accordingly, the court determines that Provident's motion to strike is due to be DENIED.

■ Turning to Shipp's motion to strike a portion of Mona Bombassi's affidavit, the court determines that the statement at issue is not subject to Fed.R.Evid. 701 or 702. The allegedly inadmissible portion of the affidavit reads:

> Provident's Claims Department is responsible for investigating claims to determine whether claimants meet the eligibility requirements set forth in the policy. This insures that Provident can provide disability coverage to employees at a cost that the plan's sponsor can afford.

Bombassi Aff. at ¶ 5. This statement, which boils down to the assertion that

Provident investigates claims in order to keep costs down, is barely more than a truism, and does not constitute the kind of opinion testimony contemplated by Fed. R.Evid. 701 or 702. At most, the statement is an articulation of Provident's policy with respect to providing affordable disability coverage to its customers, which may be a debatable proposition, but is nonetheless not the type of testimony subject to the opinion evidence rules. Accordingly, Shipp's motion to strike is also due to be DENIED.

### B. Provident's Motion for Summary Judgment

As noted, the parties agree that the applicable standard of review in this case is the "heightened arbitrary and capricious" standard. "Because an insurance company pays out to beneficiaries from its own assets rather than the assets of a trust, its fiduciary role [as an ERISA plan administrator] lies in perpetual conflict with its profit-making role as a business. That is, when an insurance company serves as ERISA fiduciary to a plan composed solely of a policy or contract issued by that company, it is exercising discretion over a situation for which it incurs 'direct, immediate expense as a result of benefit determinations favorable to [p]lan participants.'" *Brown v. Blue Cross & Blue Shield of Ala.*, 898 F.2d 1556, 1561 (11th Cir.1990) (quoting *de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1191 (4th Cir.1989)).

In *Brown*, the Eleventh Circuit described the application of the "heightened arbitrary and capricious standard" as follows:

[W]hen a plan beneficiary demonstrates a substantial conflict of interest on the part of a fiduciary responsible for benefits determinations, the burden shifts to the fiduciary to prove that its interpretation of plan provisions committed to its discretion was not tainted by self-inter-

est. That is, a wrong but apparently reasonable interpretation is arbitrary and capricious if it advances the conflicting interest of the fiduciary at the expense of the affected beneficiary or beneficiaries unless the fiduciary justifies the interpretation on the ground of its benefit to the class of all participants and beneficiaries.

*See id.* at 1567. Accordingly, the first step is to determine whether the fiduciary's decision was "wrong" from the perspective of *de novo* review. *See id.* at 1566 n. 12 ("[i]t is fundamental that the fiduciary's interpretation first must be 'wrong' from the perspective of *de novo* review before a reviewing court is concerned with the self-interest of the fiduciary"). If the fiduciary's decision was incorrect, then the burden shifts to the fiduciary to show that the decision was justified on the basis of its benefit to the class of all beneficiaries. *See id.*

■ Provident contends that its decision was correct. Provident points to Heidi Bimrose's conclusion that Shipp's occupation was sedentary in nature and their clinical reviewers' various opinions that Shipp was at least capable of working a sedentary job, perhaps even a job with slightly higher physical requirements. Accordingly, Provident argues, Shipp did not meet the definition of disability as set forth in the policy by which he was covered. Shipp counters that Provident did not properly take into account the medical evidence of his heart condition, nor did it properly construe the requirements of his occupation in coming to the conclusion that it was sedentary in nature.

After a careful review of the record, the court finds little difficulty in concluding that Shipp has created a question of fact as to whether Provident's decision to deny him benefits was correct. There are two

main considerations that lead the court to this conclusion. First, Shipp clearly suffers from a fairly serious heart condition. Shipp's first doctor, Dr. Mangel, stated that in his opinion, "[Shipp's] excessive traveling and stress of work would adversely affect his future health." PLACL00054. Although Dr. Mangel warned that stress and near-constant travel would further endanger Shipp's health, Provident's clinical reviewers only looked at Shipp's ability to work from the perspective of physical requirements—as if Shipp's ability to work could be judged solely with respect to the degree of manual labor he might be required to perform. Can Shipp sit at a desk on a full-time basis? Probably. Dr. Mangel's conclusion that Shipp was disabled, however, took into account the overall effect that Shipp's occupation was likely to have on his already precarious situation. Because Provident's clinical reviewers appear to have ignored the overall effect Shipp's occupation might have on a person's cardiovascular health, the court finds that Provident's decision may have been incorrect.

The second consideration involves Heidi Bimrose's opinion that Shipp's occupation was consistent with the duties described by the DOT under the heading "Sales Manager." In Dr. McClanahan's opinion, Bimrose mis-characterized the occupation performed by Shipp. Dr. McClanahan's affidavit states:

> The [DOT] title of Sales Manager (DOT # 163.167–018), the title Ms. Bimrose used, does not describe the job Mr. Shipp performed. Sales Manager [ ] is an administrative position in which the Manager directs a sales force. The Manager himself is not involved in direct sales; see Appendix 2 to Attachment 1. Mr. Shipp's duties required direct sales (*Job Description,* # 3); see Appendix 3 to Attachment 1. Ms. Bimrose referred to the Job Description in her report.
>
> The exertional level is mis-classified. One of the documents relied upon in the Initial Vocational Report is a Job Analysis that was signed by Ronnie Chang on January 6, 2000. This Job Analysis is in the Medium range, not Sedentary as classified by Ms. Bimrose. The requirements of lifting up to 30 pounds occasionally is clearly marked; see Appendix 4 to Attachment 1.
>
> It is my opinion that had the above referenced data been interpreted and reported correctly, Mr. Shipp would have been entitled to long term disability benefits.

McClanahan Aff. at ¶ 5, 6.

While Shipp's title was "National Sales Manager," it is clear that his duties included a great deal more than managing a sales force. Shipp was required to travel much of the time, carrying with him his luggage and a heavy sample case. *See* PLACL00248. While it may have been expedient to match Shipp's title to a heading in the DOT, the court agrees with Dr. McClanahan that Bimrose's evaluation mis-characterized Shipp's job. Provident's rejoinder, of course, is that "Sales Manager" more accurately reflects Shipp's occupation as opposed to his job, but this may be to exalt form over substance. Shipp's occupation, as it is performed in the national economy, may be more akin to a traveling salesman than to a purely sedentary administrative position. Accordingly, the court finds that Shipp has created an issue of fact with respect to Provident's interpretation and application of the "occupation" term in the policy.

█ Having determined that Shipp has produced sufficient evidence to create an issue of fact as to the correctness of Provident's arguably reasonable decision to deny him benefits, the court now looks to Provident to justify its decision "on the

ground of its benefit to the class of all participants and beneficiaries." Provident's justification is that its interpretation and application of the "occupation" term "ensures that Provident can provide disability coverage to employees at a cost that the plan sponsor can afford," and that it preserves funds for those beneficiaries with valid claims. This explanation is deficient for two reasons. First, Provident's fiduciary duty runs to the beneficiaries, not the plan sponsor, so the provision of any incidental benefit to the plan sponsor cannot purge a conflicted fiduciary of the taint of self-interest. Second, there is absolutely no showing that there is a limited amount of funds available to pay claims on the particular policy at issue in this case. Provident is really saying no more than that a restrictive interpretation which allows a claim to be denied is good for other potential claimants who may not find themselves in the same boat. The court finds that a fact issue exists as to this defense of justification, which should be determined on the basis of evidence presented at trial. Accordingly, Provident's motion for summary judgment is due to be DENIED.

## V. *CONCLUSION*

For the reasons discussed, the court determines that Provident's motion to strike, as well as its motion for summary judgment, are due to be DENIED. The court also determines that Shipp's motion to strike is due to be DENIED. Accordingly, it is hereby ORDERED:

1. Provident's Motion for Summary Judgment (Doc. # 12) is DENIED.

2. Provident's Motion to Strike (Doc. # 22) is DENIED..

3. Plaintiff Shipp's Motion to Strike (Doc. # 16) is DENIED.