**James FLYNN, Plaintiff,**

v.

**LOCAL ONE AMALGAMATED LITHOGRAPHERS OF AMERICA AND SICKNESS AND ACCIDENT FUND, Defendant.**

**No. 96 CIV. 1446(RLC).**

United States District Court,
S.D. New York.

April 14, 1998.

---

Law Offices of David Tider, Teaneck, NJ, for Plaintiff; David E. Tider, of counsel.

Kauff, McClain & McGuire, New York, NY, for Defendant; Cathleen Dawe, Kenneth A. Margolis, of counsel.

### *OPINION*

ROBERT L. CARTER, District Judge.

This action is brought by the plaintiff, James Flynn, a former member of Local One, Amalgamated Lithographers of America ("Local One"), on grounds that he was wrongfully denied retirement medical benefits by the defendant, Local One's Sickness and Accident Fund (the "Fund").[1] The plaintiff argues that the Fund's denial of his request for retirement benefits pursuant to the eligibility rules of its employee benefits plan (the "Plan") is actionable under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 et seq.[2] In addition, the plaintiff argues that the Fund committed fraud by

failing to give him proper notice of the rules of eligibility for benefits. In any event, plaintiff argues, the Fund is estopped from denying him coverage because its trustees led him to believe that he would receive them. Plaintiff seeks an order compelling the Fund to provide him with medical coverage, to reimburse him for medical expenses heretofore incurred, and to pay his costs and attorney's fees. However, the Fund denies that its actions regarding plaintiff's request for retirement benefits were unlawful.

Cross-motions for summary judgment are brought by the plaintiff and defendant pursuant to Rule 56, F. R. Civ. P. The plaintiff argues that he is entitled to summary judgment on his claims as a matter of law, as there are no genuine issues of material fact to be tried in this case. Likewise, the defendant contends that there are no genuine issues of material fact to be tried, but argues that the Fund, rather than the plaintiff, is entitled to summary judgment.

### I. Background

From July 1956 until March 1991, a period of more than thirty-five years, the plaintiff worked for employers who were parties to collective bargaining agreements with Local One and who were contributors to the Fund. (Def. Memo. of Law at 6). As an employee of contributors to the Fund, the plaintiff was entitled to medical coverage provided by the Fund. *Id.*

Due to unfavorable employment conditions for union workers in his industry, the plaintiff worked in non-union shops from March 1991 to September 1995. (Pl. Brf. at 6). These employers were not contributors to the Fund. (Def. Memo. of Law at 6). Therefore, no contributions to the Fund were made on plaintiff's behalf for the period in question, which endured for more than four years. *Id.*[3]

---

**1.** On April 24, 1996, plaintiff stipulated to the dismissal of Local One, Amalgamated Lithographers of America as a defendant in this action. Thus, Local One's sickness and accident fund is the sole defendant in this case.

**2.** The pleadings are unclear as to the legal bases for plaintiff's allegations. The court's findings are based on its conclusion that this action is predicated upon the protections afforded em-

ployees by ERISA and the common law doctrines of fraud and estoppel.

**3.** Although plaintiff remained a dues-paying member of Local One during the period when he worked for these non-union shops, his union membership did not, alone, entitle him to benefits from the Fund. (Def. Stmnt. of Facts at 4).

In a letter dated November 7, 1994, the plaintiff requested that he be granted retirement medical benefits upon his retirement from his current employer, which was not a contributor to the Fund. *Id.* In the letter, Flynn acknowledged that he did not appear to qualify for the retirement benefits he requested since the Plan's eligibility rules stated that "an individual must have at least 25 *consecutive* years of service in the fund, and may not be separated from said fund for more than 1 year prior to retirement" in order to receive the benefits in question *Id.* at 7 (emphasis added). While admitting that the Fund's trustees had adopted the rule requiring 25 consecutive years of employment in "good faith" and that he did not meet this criterion, the plaintiff wrote that he was entitled to retirement benefits, nevertheless. Because the factor disqualifying him from benefits—his four years of work with employers who were not contributors to the Fund—had been caused by circumstances beyond his control, i.e. unfavorable employment conditions in his industry for union members, the plaintiff argued that it would be justifiable for the Fund to make an exception to the consecutive employment rule on his behalf and allow him to receive benefits. (Affidavit of Colleen Magurno, Exbt. C).

On December 21, 1994, the Fund's trustees[4] considered the plaintiff's request for retirement benefits and determined that he was ineligible. (Def. Memo. of Law at 7). The trustees' determination that the plaintiff was ineligible for benefits was based on their interpretation of the Plan's Retirement Provision,[5] together with the "break in service"[6] and "Scutari" rules.[7] The consequence on employees' eligibility for retirement benefits of the trustees' interpretation of the Retirement Provision in light of the break in service and Scutari rules was the following: (1) an individual remained eligible for benefits if breaks in coverage of up to one year occurred at any point in his career, (2) an individual remained eligible for benefits if breaks in coverage exceeded one year if such breaks occurred in the middle of his career; however, under such circumstances, benefits would only be provided to the retiree, not his dependents, and (3) an individual would be ineligible for benefits if he experienced a break in coverage that exceeded one year if the lapse in coverage occurred near his retirement. (Def. Memo. of Law at 6). Consistent with this interpretation of the Plan's eligibility rules, the plaintiff, who had accumulated well over 300 months of service and who would meet the age requirement upon his retirement in 1995,[8] nevertheless was deemed ineligible for benefits. The plaintiff was ineligible because he would not have been covered under the Plan, (i.e. he would not have worked for an employer who was a contributor to the Fund), for more than one year (i.e. four years) prior to his retirement. (Def. Memo. of Law at 7).

The trustees' determination that plaintiff was ineligible for benefits was consistent with decisions that the Fund made regarding the eligibility of several other individuals in

---

4. The Fund is administered by a joint board of trustees, an equal number of which are appointed by Local One and employers who contribute to the Fund. (Def. Stmnt. of Facts at 3).

5. The Plan's manual of benefits contains the following provision concerning eligibility for retirement medical benefits (the "Retirement Provision"):

   Any retired person age 62 or over who was covered as an employee by Local One S*A* Litho Fund for 300 months prior to retirement will be covered by the Local S*A* Litho Fund for most benefits for which he/she was covered prior to retirement. The weekly sickness cash benefit is the most notable exception.

6. The break in service rule allows an individual who meets the age requirement of the Retirement Provision and who has accumulated 300 months of covered employment to be eligible for benefits even if her employment has been interrupted, provided that the break in service occurs immediately prior to her retirement and is of a duration of one year or less. (Def. Stmnt. of Facts at 3).

7. The Scutari rule, adopted in 1982, amended the break in service rule in the following way: "the break rule [shall] be broadened to provide that all periods of covered service will be taken into account, regardless of the lengths of the breaks, in any case in which the person was actually covered for 25 or more years, but that continued coverage in such case will be limited to the participant alone. Dependents will not be covered." (Def. Stmnt. of Facts at 4).

8. The plaintiff retired in September, 1995 at the age of 62. (Def. Stmnt. of Facts at 4).

1994 and 1995. *Id.* For instance, the Fund determined that Dominick Lotito, John Cunningham, and John Lundy, like the plaintiff, were ineligible for benefits. Although Lotito worked in covered employment from 1951 to 1991, he was deemed ineligible for benefits because he did not work for an employer who contributed to the Fund from July, 1991 through his retirement in January of 1995. *Id.* Cunningham worked in covered employment from 1959 through May, 1987, but failed to qualify for benefits because he did not work for a participating employer from June, 1987, through his retirement in June, 1995. *Id.* Lundy worked in covered employment from 1955 through May 1992, and was employed from May, 1992 through his retirement in October, 1994. *Id.* Although he continued to pay dues to Local One, Lundy was deemed ineligible for benefits because he was not covered by the Fund for too long a period prior to his retirement. *Id.* On the other hand, the Fund determined that Albert Fiorvanti and Lawrence Conti were eligible for retirement benefits. *Id.* at 8. Unlike Flynn, Lotito, Cunningham, and Lundy, Fiorvanti and Conti, after breaks in service in excess of one year, had returned to covered employment prior to retirement. *Id.*

Although the trustees denied the plaintiff's request for benefits, they subsequently decided to relax their interpretations of the Retirement Provision and the break in service and Scutari rules to the benefit of individuals such as the plaintiff who had worked in covered employment for substantially more than 25 years. *Id.* Having determined that the proposed changes in eligibility requirements were actuarially sound, the Fund, on September 8, 1995, amended the eligibility rules for benefits, retroactive to January 1, 1995. *Id.* at 9. Under the amended break in service rule, retirees with 35 years of employment are permitted breaks in coverage of up to 36 months, and retirees with 40 years of covered employment were permitted unlimited breaks in coverage. *Id.* These breaks were permitted at any point in an individual's career, including immediately prior to retirement. *Id.* Under the amended Scutari rule, an individual was entitled to retirement benefits (excluding dependents) even if he or she had a break in excess of those allowed under the amended break in service rule, provided that the individual returned to covered employment after his break for a period which exceeded by at least one year the period of that break. *Id.*

Even with these significant amendments to the eligibility rules, the plaintiff still did not qualify for benefits. He was not eligible for benefits under the amended break in service rule because his four-year break exceeded permissible breaks for those with less than forty years of service. *Id.* The plaintiff continued to be ineligible for benefits under the amended Scutari rule because after his four-year break he had not returned to covered employment prior to retirement. *Id.* at 10.

Plaintiff faults the Fund for his failure to qualify for benefits under the amended rules. He argues that the Fund's failure to notify him of changes in the rules made it impossible for him to plan for his retirement in a manner that would allow him to benefit from the amendments to the eligibility rules. (Pl. Reply Brf. at 3). Plaintiff maintains that his understanding of his retirement benefits was derived from his benefits manual, which contained only the language of the Retirement Provision, making no mention of the Scutari or break in service rules. *Id.* at 4. Thus, plaintiff argues, he was informed too late—years after he had accepted a non-union position—that he would lose his retirement benefits if he failed to work for an employer who was not a contributor to the Fund. *Id.* From the Fund's alleged failure to give him proper notice of the eligibility rules, plaintiff deduces that changes in the trustees' interpretations of the Retirement Provision that were occasioned by the Scutari and break in services rules were made only for "favored status" members. *Id.*

The plaintiff also argues that the Fund failed to inform him (and other rank and file members of Local One who had accrued a great deal of seniority) of the Plan's eligibility requirements because it was in the Fund's financial interests to do so. *Id.* at 5. That is, the plaintiff contends that Local One conspired with the Fund to deprive him (and others) of work in a union shop during the four-year period in which he worked for non-

union employers who were not contributors to the Fund in order to avoid paying the retirement benefits due him. *Id.* at 5–6.

■ The plaintiff faults particular oral representations made by certain employees of the Fund concerning his failure to qualify for retirement benefits, as well. Specifically, he claims that Joe Calderon, a Fund trustee, and Pat Lopresti, a Fund trustee and president of Local One, made representations that led him to believe that he would receive benefits upon his retirement. (Def. Stmnt. of Facts at 8). Lopresti allegedly told the plaintiff that he would personally work on the plaintiff's behalf to ensure that he received benefits, because it would be "unfair" if the plaintiff did not receive them. *Id.*[9]

According to the plaintiff, the Fund's alleged favoritism, the misleading statements made by its representatives, and the alleged conspiracy between it and Local One to benefit financially by failing to disclose important aspects of the Plan's eligibility rules violates the law. Defendant denies that its actions regarding plaintiff's request for retirement benefits were unlawful.

## II. Analysis

Rule 56(c), F. R. Civ. P. provides that summary judgment is appropriate where "... there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." If the moving party meets its burden to show the absence of a material factual dispute, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), F. R. Civ. P. While the court is to draw all reasonable inferences in support of the non-moving party, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), the court should not be reluctant to grant summary judgment in cases where an ele-

ment essential to prove the non-moving party's case is factually unsupported in the record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The court's determination on the merits of each party's motion for summary judgment turns on the ability of each to produce evidence sufficient to support or rebut the allegations made by the plaintiff. The plaintiff must produce evidence sufficient to establish that defendant's denial of retirement benefits pursuant to the Plan's rules of eligibility constitutes breach of contract or fraud, is barred by estoppel, or violates ERISA. By meeting this burden, the plaintiff can show that he is entitled to judgment as a matter of law. The defendant's burden is to demonstrate that the plaintiff has not sustained his burden as to these causes of action, and that the Fund therefore is entitled to judgment as a matter of law.

After reviewing the record in this case in light of applicable law, the court finds the plaintiff has not met his burden as to any of his causes of action, while the defendant has demonstrated that it is entitled to summary judgment on each count.

■ Because the record shows that the Plan confers discretion upon its trustees to interpret its provisions,[10] Supreme Court precedent dictates that this court review the Fund's decision to deny the plaintiff retirement benefits under the "arbitrary and capricious" standard. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)("[A] denial of benefits challenged under § 1132(a)(1)(B) [of ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."); *see also*

---

9. The plaintiff also repeatedly asserts that the Fund's issuance to him of a $32 refund check somehow suggests defendant's liability. The court, however, finds this "evidence" completely irrelevant to the issues presented in this case.

10. The Plan provides that
    The provisions in this manual are subject to the rules and regulations of the Fund adopted by the Board of Trustees from time to time,

and by the Trust indenture which established the fund and govern its operations.
. . .
The trustees shall be the sole and final judges of the standard of proof required in any case, the application and interpretation of the provisions in this manual, and of the entitlement to or amount of benefits.
(Def. Stmnt. of Facts at 2).

*Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 442 (2d Cir.1995).

■ The arbitrary and capricious standard mandates a great deal of deference to decisionmakers. Review under this standard does not involve a determination about whether a decisionmaker has reached the best result in any given scenario. The court is not permitted to substitute its own judgment for that of the decisionmakers. *Bowman Transp., Inc. v. Arkansas–Best Freight Sys.,* 419 U.S. 281, 285, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974). Under this standard of review, the court may overturn a decision to deny benefits only if it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pagan,* 52 F.3d at 442; *Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.,* 46 F.3d 1264, 1271 (2d Cir.1995)("The court may not upset a reasonable interpretation by the administrator."). In evaluating whether a decision to deny benefits is reasonable, the court must consider "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Bowman,* 419 U.S. at 285, 95 S.Ct. 438.

■ The plaintiff has not presented any evidence to persuade the court that the Fund's decision to deny his benefits should be overturned under this highly deferential standard of review. Although this rule barring plaintiff from collecting retirement benefits obviously has not yielded the best results for the plaintiff and similarly situated individuals, it does not strike the court as an unreasonable requirement. The plaintiff is able to characterize the Fund's requirement that employees work for an employer who contributes to the Fund immediately prior to retirement as particularly onerous by minimizing his own decisionmaking abilities. For instance, the plaintiff admits but subsequently downplays the significance of the fact that he could have received unemployment compensation for a period of time, rather than work in nonunion shops during the four-year period in question. Plaintiff's letter to the Fund of November 7, 1994 confirms his awareness of this option.

In 1991 there were no jobs to be had, and the Local encouraged me to seek employment elsewhere, even in non-union shops. It was not easy for me to accept anything that was not union, since 35 years sets you in your way, as to rules and regulations. It was either find employment or collect unemployment, which I did not want to do.

While the court acknowledges that plaintiff's decisionmaking abilities were constrained by unfavorable conditions for union workers in his industry, plaintiff's above quoted words evince an awareness that his decision to work in non-union shops was a calculated one. Plaintiff's preference for working in non-union shops over receiving unemployment compensation is significant. While he may have assumed that the former was the more noble choice, plaintiff's decision to work for employers who were not contributors to the Fund rather than accept unemployment compensation may well have contributed directly to his current predicament. Taking unemployment might have yielded a different fate regarding his ability to obtain retirement benefits. For instance, industry conditions might have improved during the period in which plaintiff would have received unemployment benefits, allowing him additional time in which to seek and perhaps to attain union employment—time and opportunity to continue seeking covered employment that the non-shop jobs on which plaintiff began working in 1991 apparently did not allow.

In any event, it is clear that it was the plaintiff's obligation to respond rationally when presented with the options that he confronted in 1991. Among his responsibilities was to consider the consequences of working for certain non-union shops on his retirement benefits. While the plaintiff asserts ignorance of the Plan's rules of eligibility, his assertion is counter-intuitive. It is inconceivable to the court that an individual who is as apparently willful and deliberate as the plaintiff would not have carefully investigated the impact of his employment decisions on his retirement benefits.

■ Even if the court grants plaintiff's contention that the language used in the Retirement Provision may have been ambig-

uous, the trustees' reasoned interpretation of the rule must be sustained. *See Jordan*, 46 F.3d at 1264. Notwithstanding any ambiguity in language, the trustees' uniform application of the Plan's eligibility rules makes the court more inclined to view their understanding of these rules as reasonable. *See Hoover v. Blue Cross and Blue Shield of Alabama*, 855 F.2d 1538, 1541 (11th Cir.1988)(citing consistency as factor in determining whether administrator has acted arbitrarily and capriciously in applying disputed provision of benefits plan). The consistency of the Fund's handling of requests for retirement benefits is an important element indicating the reasonableness of the trustees' interpretation of the Retirement Provision, along with the break in service and Scutari rules. That the interpretative convention relied upon in considering plaintiff's request for benefits was applied consistently is demonstrated in the record. (Def. Stmnt. of Facts at 5–6).

The recent amendments to the break in service and Scutari rules also make the plaintiff's challenge to the Fund's interpretation of the Plan's rules of eligibility particularly difficult to sustain under the arbitrary and capricious standard of review, notwithstanding any ambiguity in the rules. Enacted by the trustees after plaintiff's request for benefits was denied, these amendments severely undercut plaintiff's contention that the Fund is indifferent to the reality that many long-term employees experience breaks in covered employment during their working years. The amendments appear to be quite generous: retirees with 35 years of employment are permitted breaks in covered employment of up to 36 months, and retirees with 40 years of covered employment are permitted unlimited breaks in coverage. (Def. Memo. of Law at 6). These breaks were permitted at any point in an individual's career, including immediately prior to retirement. *Id.* Even if an individual takes a break in service in excess of these, the employee may receive retirement benefits if he returns to covered employment for a period that exceeds by one year the period of his break. *Id.*

Despite these amendments to the Plan's eligibility rules, the plaintiff could not qualify for retirement benefits because he was not covered by an employer who was a contributor to the Fund for a period of four years prior to his retirement. *Id.* at 7. While challenging even this rule as unreasonable, the plaintiff has not offered evidence showing that he has attempted to comply with it. For example, he has not offered evidence that although he has continued to seek covered employment during the four years in which he worked in non-union shops, he consistently has been unable to find the type of employment that would allow him to qualify for retirement benefits under the Plan's amended rules.

The plaintiff avoids addressing these possibilities by arguing his ignorance and blaming his purported lack of knowledge about the Plan's eligibility rules on the Fund's allegedly careless or nefarious acts. According to the plaintiff, he had no idea that working for a noncontributing employer would have any bearing upon his benefits, and the Fund either negligently or purposefully prevented him from attaining this knowledge for its own financial gain. The plaintiff finds the timing of Fund's decision to amend the eligibility rules, the fact that they amended the rules, and the fact that the amendments were made retroactive to January 1, 1995, probative of the Fund's fraud with respect to his claim for retirement benefits, or that this evidence makes out a claim on grounds of estoppel. (Pl. Reply Brf. at 7). In addition, plaintiff makes reference to the allegedly misleading statements or omissions of Fund trustees, specifically Joe Calderone and Pat Lopresti, as evidence that the Fund is guilty of fraud or is estopped from disclaiming coverage. (Def. Stmnt. of Facts at 8).

Plaintiff's fraud and estoppel claims are not reviewable under the arbitrary and capricious standard that governs the court's review of the Fund's interpretation of the Plan under ERISA. It is unnecessary for the court to reach these issues on the merits, however, because plaintiff's common law claims are preempted by ERISA.

ERISA provides that it "shall supersede any and all State laws insofar as they ... relate to any employee benefit plan described in section 1003(a)." 29 U.S.C.

§ 1144(a).[11] The civil enforcement mechanism provided under ERISA, 29 U.S.C. § 1132, is the exclusive remedy for beneficiaries of such a plan who believe that it is not being administered in accordance with the terms or provisions of ERISA. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

■ Thus, common law claims of fraud and estoppel generally are preempted by ERISA, although there are exceptions to this rule. *See Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270, 288 (2nd Cir. 1992); *Snyder v. Elliot Dann Co.,* 854 F.Supp. 264, 271 (S.D.N.Y.1994)(Sweet, J.); *Sandler v. Marconi Circuit Technology Corp.,* 814 F.Supp. 263 (E.D.N.Y.1993). Having determined that, in any event, there is insufficient evidence in the record to support plaintiff's contention that the Fund's denial of his request for retirement benefits is barred by estoppel or rises to the level of fraud, the court finds that, in this instance, plaintiff's claims are preempted by ERISA.

### III.   Conclusion

The Plan's eligibility rules are a mistaken target for plaintiff's frustration at being denied retirement benefits. The true cause of the plaintiff's misfortune is the unfavorable employment conditions that have plagued his industry in recent years. This underlying problem is beyond the scope of this litigation.

Thus, while the consequences of plaintiff's four years of work for employers who were not contributors to the Fund certainly are unfortunate, it not within the court's discretion to disturb the Fund's interpretation of the Plan's eligibility rules. Accordingly, plaintiff's motion for summary judgment on his claims against the Fund is denied.

The foregoing analysis supports the defendant's motion for summary judgment.

**11.** The Plan challenged by the plaintiff is an "employee welfare benefit plan" within the

Therefore, defendant's motion hereby is granted pursuant to Rule 56(c), F. R. Civ. P. IT IS SO ORDERED.

meaning of this provision of ERISA.   (Def. Memo. of Law at 3).