Paul RUDOLPH, Plaintiff,

v.

**JOINT INDUSTRY BOARD OF THE ELECTRICAL INDUSTRY, Pension Trust Fund of the Pension, Hospitalization and Benefit Plan of the Electrical Industry, Defendants.**

**No. 00 CIV. 5306(CM).**

United States District Court,
S.D. New York.

March 23, 2001.

Michael H. Sussman, Law Offices of Michael H. Sussman, Goshen, NY, for Plaintiff.

Martin M. Ween, Wilson Elser Moskowitz Edelman & Dicker, New York City, for JIB and Pension Fund.

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

McMAHON, District Judge.

Plaintiff Paul Rudolph seeks legal and equitable relief against Defendant Joint

Industry Board of the Electrical Industry ("JIB") under § 404(a) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1104(a), and §§ 502(a)(1), (a)(2) and (a)(3), 29 U.S.C. §§ 1132(a)(1)(B), (a)(2) and (a)(3), for denial of his disability pension. Defendant moves for summary judgment.

## PROCEDURAL HISTORY

In its motion for summary judgment, defendant claimed that plaintiff inappropriately named JIB as the sole defendant in this action. Contending that JIB had no discretionary authority or responsibility to make participant eligibility determinations, defendant JIB argued that it did not act as a fiduciary with respect to Plaintiff's application for disability pension benefits. Defendant noted that the only way for this Court to effect complete relief would be for the Plaintiff to seek relief as against the Pension Fund and its Pension Committee ("the Pension Fund"), rather than the JIB, pursuant to 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B).

On December 7, 2000, this court granted defendant's motion to add the Pension Fund as an additional defendant. The parties stipulated that plaintiff could file an amended complaint and that defendant would have twenty days from the date of service upon defendant's counsel to file any papers in further support of defendant's motion for summary judgment. That amended complaint—against the Pension Fund alone—was served on defendants' counsel [1] on December 8, 2000. No further papers were filed.

## FACTS PERTINENT TO THE MOTION

On a motion for summary judgment, the Court views the facts most favorably to the non-moving party—in this case, the Plaintiff.

Paul Rudolph is a resident of Orange County and was employed by JIB from 1993 to 1998. He previously had worked for 27 years for Benjamin Electrical Engineering Works, Inc., in several capacities.

In or about August 1998, JIB terminated plaintiff's employment because he was too debilitated to perform his work functions. His disability stemmed from his coronary artery disease, hypertension, poorly controlled diabetes mellitus, and the physical and mental effects of an explosion which injured plaintiff on the job in 1974.

### 1. *The Plan*

The Pension Trust Fund of the Pension, Hospitalization and Benefit Plan of the Electrical Industry is an employee benefit plan established under and pursuant to the provisions of the Taft–Hartley Labor Management Relations Act, 29 U.S.C. § 141 *et seq.* and is administered on a day-to-day basis by the JIB. The Defendant JIB is designated in the Trust Agreement as the Administrator of the Plan. Section 5.11 of the Trust Agreement states as follows:

> The Joint Industry Board of the Electrical Industry, by its chairman, shall be the administrator of the Plan and shall provide to the Plans and Trust accounting, record-keeping and other applicable and necessary services and shall be assigned to it by this Trust, required of it as Plan Administrator under ERISA or as otherwise agreed to by and between the Committee and the Joint Industry Board of the Electrical Industry.

(Mundo Aff. at Exh. A.) While JIB administers the Plan, the Pension Fund provides that a joint board of Trustees, known as the Pension Committee, has discretion to make determinations of eligibility for bene-

---

**1.** Martin M. Ween, Esq. is the counsel for both JIB and the Pension Fund.

fits from the Pension Fund. Section 5.19 specifically states as follows:

> The Committee shall, subject to the requirements be the sole judge of the standard of proof required in any case and the *application and interpretation of this Plan* and decisions of the Committee shall be final and binding on all parties. Wherever in the Plan the Committee is given discretionary powers, the Committee shall exercise such powers in a uniform and non-discriminatory manner.

(Id.) (emphasis added.)

Plaintiff made a timely application in August 1998 for disability retirement benefits from JIB. In order to recover benefits under the Plan, Rudolph was required to prove that (1) he is determined by the Pension Committee to be permanently incapacitated or disabled so that he can no longer be gainfully employed in the Electrical Industry or in any other line of business; (2) he has earned at least 10 Pension Credits; (3) he has been available for employment by contributing employers for at least 10 years immediately prior to being disabled. (Rudolph Aff. at Exh. 2)

Plaintiff was examined by physicians at the instance of the Pension Committee. These physicians concluded that he was not disabled to the extent he could no longer secure gainful employment in the Electrical Industry or in any other line of business. Rudolph and his physician furnished additional information, and the Pension Committee decided on February 24, 1999 to deny disability pension benefits. Plaintiff was informed of this by letter dated February 25, 1999, and was told that he was entitled to appeal the decision of the Trustees within 60 days of the date of the letter.

On March 3, 1999, Plaintiff indicated that he was appealing the denial of disability pension benefits. He was given an examination by an internist and cardiologist, different from the physicians who initially examined him. These physicians also concluded that Rudolph was not disabled to the extent that he could no longer secure gainful employment in the Electrical Industry or in any other line of business. The Pension Committee denied his appeal at a meeting held on June 23, 1999, and the result was communicated to the Plaintiff in a letter dated June 24, 1999.

### 2. The Medical Evidence

#### a. November 6, 1998

Alex E. Maurillo, Medical Director of the Pension Hospitalization Benefit Plan Medical Department, informed Larry Jacobson, Chairman of JIB, by letter dated November 6, 1998, that Plaintiff had been evaluated by an Internist and Cardiologist for Disability Evaluation. The letter noted that Rudolph underwent Cardiac Catherization in 1996, and was told he had Two Vessel Chronic Obstructive Disease, but was not a good candidate for surgery. The physical examination showed him to be *within normal limits except for obesity and an edematous left lower extremity.* Plaintiff also was being watched for diabetes. Maurillo concluded that Rudolph has a partial disability, but was not disabled to the extent that he can no longer secure gainful employment in the Electrical Industry or in any other line of business. (Calascibetta Aff. at Exh. B.) (emphasis added).

#### b. February 24, 1999

The Pension Committee reviewed the Medical Director's report, and concluded that Rudolph was not disabled to the extent that he could qualify for benefits. It explained that "[t]he findings of the Medical Director indicate that you are not disabled to the extent that you can no longer

secure gainful employment in the Electrical or other line of business." The Committee gave Plaintiff 60 days to appeal the decision and to provide any pertinent medical documents. (Calascibetta Aff. at Exh. C.)

c. March 3, 1999

Gregory A. Spencer, M.D. (plaintiff's doctor) sent a letter to James R. Harley, Pension Director, dated March 3, 1999. Dr. Spencer noted the following physical problems: diabetic retinopathy with decreased vision in his left eye; mild peripheral neuropathy with bilateral lower extremity venous stasis ulcerations; and two-vessel coronary artery disease. Dr. Spencer said that the most recent cardiac catherization in 1996 demonstrated a 90% right artery lesion and a 60% left anterior descending lesion, with a preserved ejection fraction of 67%. Plaintiff also suffered from a stress disorder, and became quite agitated with a rage reaction. He was treated with BuSpar for that condition. Plaintiff also had gout that effects his right wrist, hypertension, episodic vertigo, and severe osteoarthritis, particularly in his feet.

Spencer concluded that Plaintiff was unable to walk any distance and that traveling while sitting in a car would be problematic, because Plaintiff could not keep his feet up. As a result, Dr. Spencer said, "*If the patient is to work he should be in a situation where he is not walking, able to keep his feet elevated most of the time and be under as little stress as possible. This may not be realistic given the jobs that are available through your industry.*" (Calascibetta Aff. at Exh. E.) (emphasis added).

d. June 3, 1999

After his appeal, Plaintiff was reexamined by the doctors of the Pension Hospitalization Benefit Plan Medical Department. The patient complained of occasional flushing, headache, tightness in his chest, palpitation, no memory and some difficulty in walking. They concluded that the patient suffered from Obesity, Gout, Diabetes and Coronary Artery Disease, but that, as before, the majority of his examination was within normal limits. The cardiac tests revealed *normal heart contractability, a fair ejection fraction of his left ventricle, and no significant evidence of myocardial ischemia.* The doctors concluded that any coronary artery disease was not severe-and that the patient was not disabled to the extent that he could no longer secure gainful employment in the electrical, or any other industry. (Calascibetta Aff. at Exh. F.)

Plaintiff was again denied benefits by the Pension Committee, based on the Medical Director's Report. (Calascibetta Aff. at Exh. G, H.) He thereafter applied for and was granted a standard pension benefit from the Pension Fund.

Defendant makes two arguments in support for its motion for judgment on the pleadings: (1) causes of action arising under Section 404(a) of ERISA cannot be maintained on behalf of a participant seeking benefits; and (2) actions by the Plan were not arbitrary and capricious. Plaintiff has now conceded that he cannot demand a jury trial for an equitable claim of "breach of a fiduciary duty," and cannot seek mental and emotional damages in an action pursued under ERISA.

For the reasons stated below, defendant's motion for summary judgment is granted.

DISCUSSION

Defendant has moved pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for a judgment on the pleadings.

That Rule provides that if matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by Rule 56. *See* Fed R. Civ. P. 12(c). Because both parties have attached exhibits to their motions, which I have reviewed and to which I refer, this motion will be treated as a motion for summary judgment.

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In addressing a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Whether any disputed issue of fact exists is for the Court to determine. *See Balderman v. United States Veterans Admin.*, 870 F.2d 57, 60 (2d Cir.1989). The moving party has the initial burden or demonstrating the absence of a disputed issue of material fact. *See Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998).

### 1. *ERISA*

Plaintiff seeks relief under § 404(a) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1104(a), and §§ 502(a)(1), (a)(2) and (a)(3) of ERISA, 29 U.S.C. §§ 1132(a)(1)(B), (a)(2) and (a)(3), for denial of his disability pension. The complaint specifically seeks relief under 404(a), but the memorandum in opposition to defendant's motion for summary judgment addresses relief under 502(a)(1), (a)(2) and (a)(3). This court will address each, in turn.

■ ERISA is a comprehensive statute enacted to protect the interests of participants in employee benefit plans and their beneficiaries "by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans." ERISA § 2(b), 29 U.S.C. § 1001(b). Section 404 of ERISA sets forth a fiduciary's basic duties, as derived from traditional trust law principles. *See* 29 U.S.C. § 1104; *Gruby v. Brady*, 838 F.Supp. 820, 828 (S.D.N.Y.1993). Pursuant to this section, fiduciaries must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *See Gruby*, 838 F.Supp. at 828 *quoting Whitfield v. Tomasso*, 682 F.Supp. 1287, 1301 (E.D.N.Y. 1988). Section 404 is brought to life by ERISA's "civil enforcement" section which provides that a civil action may be filed:

(1) by a participant or beneficiary—

(A) for the relief provided for in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan ...

ERISA § 502(a), 29 U.S.C. § 1132(a).

ERISA Section 502(a)(2) authorizes a beneficiary to bring an action against a fiduciary who has violated section 409(a). Section 409(a) provides that: "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach ..." 29 U.S.C. § 1109(a).

▊ Despite its broad language, however, the United States Supreme Court has interpreted Section 409(a) as providing only limited relief. *See Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147–48, 105 S.Ct. 3085, 3092–93, 87 L.Ed.2d 96 (1985). In *Russell*, the Court rejected the plaintiff's request for an *individual* remedy for damages under 409(a) because that type of remedy was inconsistent with ERISA's emphasis on the relationship between a fiduciary and the plan as a whole. *See id.* It further noted that a fiduciary's mishandling of an individual benefit claim does not violate any of the fiduciary duties defined in ERISA. *See id.; Murdock*, 861 F.2d at 1414; *Gruby*, 838 F.Supp. at 829. Thus, section 409(a) authorizes relief only when a fiduciary has breached one of its duties to an employee benefit plan as defined by ERISA. *See Gruby*, 838 F.Supp. at 829 *citing Amalgamated Clothing & Textile Workers Union v. Murdock*, 861 F.2d 1406, 1413 (9th Cir.1988). Moreover, this section authorizes relief only for the "benefit of the plan

as a whole." *Id.* (*quoting Russell*, 473 U.S. at 140, 105 S.Ct. at 3089).

Because there is no allegation that the Defendant breached a fiduciary duty to the Plan as a whole, Plaintiff's claim will not stand under Section 502(a)(2). Nevertheless, Section 502(a)(1)(B) and (a)(3) of ERISA—considered the statutory "catchall" provisions, *see Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996)—allows suit against the employee benefit plan, pursuant to the terms of the Trust Document. The plaintiffs have the right to bring their claim under 502(a)(1)(B) and (a)(3), but that claim will be reviewed under an arbitrary and capricious standard, as explained below.

### 2. *Arbitrary and Capricious Standard*

▊ The U.S. Supreme Court in *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 957, 103 L.Ed.2d 80 (1989), held that "a denial of benefits challenged under 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Where the plan reserves such discretionary authority, denials are subject to the more deferential arbitrary and capricious standard, and may be overturned only if the decision is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243 (2d Cir.1999) *quoting Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir.1995).

▊ The plan administrator bears the burden of proving that the arbitrary and capricious standard of review applies, since "the party claiming deferential review should prove the predicate that justifies

it." *Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 226, 230 (2d Cir.1995).

The Pension Committee clearly had discretionary authority to determine eligibility for benefits under the Pension Fund. Section 5.19 of the Plan specifically states:

The Committee shall, subject to the requirements be the sole judge of the standard of proof required in any case and the application and interpretation of this Plan and decisions of the Committee shall be final and binding on all parties. Wherever in the Plan the Committee is given discretionary powers, the Committee shall exercise such powers in a uniform and non-discriminatory manner.

(Mundo Aff. at Exh. A.)

■ Plaintiff argues that *Masella v. Blue Cross & Blue Shield of Connecticut*, 936 F.2d 98 (2d Cir.1991) controls. In *Masella*, the Second Circuit applied a de novo standard of review to decisions by Blue Cross regarding medical and dental services. Plaintiff was diagnosed with temporomandibular joint dysfunction (TMJ) and sought reimbursement for her treatment from Blue Cross, her health insurance provider. Masella's plan contained exclusions for certain dental treatment, but did not specifically refer to TMJ:

ARTICLE VI–EXCLUSIONS AND LIMITATIONS

1. Benefits will be paid only for services (a) specifically described in the Comprehensive Schedule of Professional Services....; (b) rendered or ordered by a Doctor; (c) within the scope of her licensure; and (d) medically necessary for the proper diagnosis, care and treatment of the Member...

7. Dental: Payment will not be made for the removal of cysts, exostoses in conjunction with dental procedures, such as root canal, apioectomy and extrac-

tions, when performed in the same operative field. No benefits will be paid for dental procedures or x-rays such as apical, bitewing, occlusal or in other than traumatic cases, panoramic radiographs.

Defendant Blue Cross argued that the benefit plan gave it discretionary authority to determine eligibility for benefits, or to construe the terms of the plan, under *Firestone*. *See id.* The Defendant based its argument on the fact that it was authorized to decide the scope of services listed in its "Comprehensive Schedule of Professional Services," and that it had the ultimate authority to determine what major medical benefits to offer. The Court rejected this reasoning, stating that if discretionary authority to determine terms and conditions of a plan were equivalent to an implicit grant of discretion to interpret the terms once established, "then every benefit plan would be held to implicitly grant such discretion to the entity that established it." *Id.* at 103, 109 S.Ct. 948.

While the *Masella* court applied a de novo standard, it noted that that case had little resemblance to typical plan provisions cited in post-*Firestone* cases as the basis for a more deferential review. *See id.; Jones v. Laborers Health & Welfare Trust Fund*, 906 F.2d 480, 481 (9th Cir. 1990) (plan gave trustees the power "to construe the provisions of . . . the Plan" and provided that any construction adopted by the trustees in good faith would be binding); *Batchelor v. International Brotherhood of Electrical Workers Local 861 Pension & Retirement Fund*, 877 F.2d 441, 443 (5th Cir.1989) (plan gave trustees "full power to construe the provisions of this Agreement" as well as the authority to "interpret the Plan"); *Guy v. Southeastern Iron Workers' Welfare Fund*, 877 F.2d 37, 39 (11th Cir.1989) (plan conferred upon the trustees "full power to construe the provisions of [the] Trust").

The present case is distinguishable from *Masella.* Unlike Blue Cross, the Pension Committee in this case does not base its "discretionary authority" on its ability to write the standards for eligibility under the Plan. Rather, it bases its authority on the fact that it is the "sole judge of the . . . application and interpretation of this Plan." Accordingly, this Court will review the denial of Rudolph's claims under the arbitrary and capricious standard.

■ Under the arbitrary and capricious standard, the decision of a claim Administrator shall not be overturned unless it is found to be (1) without reason; (2) unsupported by substantial evidence; or (3) erroneous as a matter of law. *See O'Shea v. First Manhattan Co. Thrift Plan & Trust,* 55 F.3d 109, 112 (2d Cir. 1995) (citations omitted); *Pagan v. NYNEX Pension Plan,* 52 F.3d 438 (2d Cir.1995). The arbitrary and capricious standard pays great deference to the administrative decision makers, *see Flynn v. Local One Amalgamated Lithographers of America, Sickness and Accident Fund,* 18 F.Supp.2d 263 (S.D.N.Y.1998), but the reviewing court must consider whether the claim determination was based on a consideration of relevant factors and whether there has been a clear error of judgment. *See Pagan* at 442.

Courts have held a number of different actions by claim fiduciaries to constitute arbitrary and capricious decision making: (1) ignoring relevant factors or failing to base the decision on substantial evidence, *see Miller v. United Welfare Fund,* 72 F.3d 1066 (2d Cir.1995); *Zuckerbrod v. Phoenix Mutual Life Ins. Co.,* 78 F.3d 46 (2d Cir.1996); (2) applying plan standards in an inconsistent manner, *see Brumm v. Bert Bell NFL Retirement Plan,* 995 F.2d 1433, 1440 (8th Cir.1993), *reh'g and reh'g en banc denied; Egert v. Connecticut General Life Ins. Co.,* 900 F.2d 1032 (7th Cir.

1990); (3) failing to obtain relevant expert advice, particularly once the plan participant has submitted an expert opinion in support of his claim, *see Miller,* 72 F.3d at 1073; (4) failing to obtain, or to otherwise request from a plan participant, particular kinds or types of evidence which the claim administrator requires to approve a claim, *see Booton v. Lockheed Medical Benefit Plan,* 110 F.3d 1461, 1463–64 (9th Cir. 1997); *VanderKlok v. Provident Life and Accident Ins. Co.,* 956 F.2d 610, 616 (6th Cir.1992); (5) disregarding actual plan provisions or constructively amending the plan by inserting new or different requirements, *see Lickteig v. Business Men's Assur. Co. of America,* 61 F.3d 579, 585 (8th Cir.1995); *Kekis v. Blue Cross & Blue Shield of Utica–Watertown, Inc.,* 815 F.Supp. 571, 579 (N.D.N.Y.1993); and (6) failing to investigate or clarify disputed issues of fact and/or uncritically accepting the opinions of its own consultants, *see Crocco v. Xerox Corp.,* 956 F.Supp. 129, 140 (D.Conn.1997), *aff'd in part, rev'd on other grounds,* 137 F.3d 105 (2d Cir.1998), *Manginaro v. Welfare Fund of Local 771, I.A.T.S.E.,* 21 F.Supp.2d 284, 305–306 (S.D.N.Y.1998), *Maida v. Life Ins. Co. of N. America,* 949 F.Supp. 1087, 1092–93 (S.D.N.Y.1997).

■ I see no clear error of judgment here. The Pension Committee rendered its determinations after receiving and reviewing appropriate documentation and information, including reports on the results of Rudolph's medical examinations. The Pension Committee applied the information to the requirement of the Plan as to disability benefits. This Plan stated that a participant must be ". . . determined by the Pension Committee to be permanently incapacitated or disabled to such an extent that he can no longer secure gainful employment in the Electrical Industry, or any other line of business, . . ." (Rudolph Aff.

at Exh. 2.) The record contains evidence to support such a determination. *See O'Shea*, 55 F.3d at 112. It was, therefore, neither arbitrary nor capricious for the Pension Committee to reach the conclusion it did. Giving great deference to the administrators, *see Flynn*, 18 F.Supp.2d at 263, I will not upset their reasonable interpretation of the Plan's provisions as applied to Rudolph's case.

■ Plaintiff's further argument that he applied for and was granted disability benefits under the Social Security Administration is irrelevant here. A plan administrator making discretionary determinations as to eligibility is not bound by the determination of the Social Security Administration. *See Kunstenaar v. Connecticut Gen. Life Ins. Co.*, 902 F.2d 181, 184 (2d Cir. 1990) (noting that other statutory definitions of disability did not influence the definition offered in the plan at issue).

Accordingly, I find that the Pension Committee's actions were not arbitrary and capricious as a matter of law.

3. *De Novo Standard*

■ Even if I were to apply a de novo standard, I would still grant summary judgment. A review of a claim denial under the de novo standard requires that (1) plan terms "be given their plain meanings, ... the interpretations given by the average person," *Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077, 1084 (1st Cir.), *cert. denied*, 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990); (2) the plan be read as a whole, *see Alfin, Inc., v. Pacific Ins. Co.*, 735 F.Supp. 115, 119 (S.D.N.Y.1990); (3) the fiduciary must show that the claimant's interpretation is unreasonable and that its own interpretation is the only one that could fairly be placed on the policy, see *id.*; and (4) ambiguities in the plan be construed in favor of claimant, *see Masella v. Blue Cross & Blue Shield of Connecticut, Inc.*, 936 F.2d 98, 107 (2d Cir.1991).

■ Applying the plain meaning of the Plan here, the standard for eligibility is quite strict. Plaintiff must prove to the Pension Committee that he is "permanently incapacitated or disabled so that he/she can no longer be gainfully employed in the Electrical Industry or in any other line of business; ..." The record before this court does not support such a finding. Dr. Spencer, Plaintiff's own physician, by letter dated March 3, 1999, concluded that: *"[i]f the patient is to work* he should be in a situation where he is not walking, able to keep his feet elevated most of the time and be under as little stress as possible. This *may not be realistic* given the jobs that are available through your industry." (emphasis added). The words of Dr. Spencer would clearly permit Rudolph to assume a job that does not require much walking, and has a low-level of stress. Therefore, Rudolph can still be employed in another line of business—and perhaps even in the Electrical Industry, if such jobs existed.

Even applying a de novo standard of review, I find that Rudolph was not entitled to benefits under the Plan.

Accordingly, defendant's motion for summary judgment is granted. The Clerk is directed to close the case.

This constitutes the decision and order of the Court.